UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT HUMPHRIES, and DENNIS
MOWRY, *individually and on behalf of all
others similarly situated*,

Plaintiffs,

-against-

MITSUBISHI CHEMICAL AMERICA, INC.,
MITSUBISHI CHEMICAL AMERICA
EMPLOYEES' SAVINGS PLAN
ADMINISTRATIVE COMMITTEE, and
JANE AND/OR JOHN DOES 1-10,

Defendants.

Case No. 1:23-cv-06214 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

In this putative class action under the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. § 1001 *et seq.*, Plaintiffs Robert Humphries ("Humphries") and Dennis

Mowry ("Mowry" and, together with Humphries, "Plaintiffs") allege that their former employer

Mitsubishi Chemical America, Inc. ("Mitsubishi Chemical"), and the Administrative Committee

of the Mitsubishi Chemical America Employees' Savings Plan (the "Administrative Committee"

and, together with Mitsubishi Chemical, "Defendants") violated their fiduciary obligations under

federal law with respect to the Mitsubishi Chemical America Employees' Savings Plan (the

"Plan").  Before the Court is Plaintiffs' motion for leave to file a second amended complaint to

join parties to this action.  For the following reasons, the motion is GRANTED.

## BACKGROUND

The Court assumes the parties' familiarity with the procedural history of this action, and

sets forth here only those facts necessary for the present motion.

On November 7, 2024, the Court dismissed the initial complaint for lack of standing and failure to state a claim, but permitted Humphries — who was, at that time, the sole Plaintiff named in the complaint — to replead. *See generally Humphries v. Mitsubishi Chem. Am., Inc.* (*Humphries I*), No. 23-cv-06214 (JLR), 2024 WL 4711296 (S.D.N.Y. Nov. 7, 2024). After Plaintiffs filed an amended complaint, *see* Dkt. 56 ("FAC"), Defendants again moved to dismiss, and on August 19, 2025, the Court granted in part and denied in part that motion. *See generally Humphries v. Mitsubishi Chem. Am., Inc.* (*Humphries II*), No. 23-cv-06214 (JLR), 2025 WL 2402281 (S.D.N.Y. Aug. 19, 2025). In particular, the Court denied the motion to dismiss Plaintiffs' claim that Defendants breached their fiduciary duty to the Plan "by offering more expensive mutual-fund share classes when cheaper, identical share classes of the same fund were available as investment options for the Plan." *Id.* at *9.

On November 14, 2025, Plaintiffs filed a motion seeking leave to file a second amended complaint. *See* Dkt. 78 ("Mot."), Dkt. 79 ("Br."), Dkt. 80-1 ("Proposed SAC"); Dkt. 80-2 ("FAC/SAC Redline"). The Proposed SAC adds sixteen new defendants to the action, each allegedly a member of the Administrative Committee and fiduciary of the Plan (the "Individual Members"). *See* Proposed SAC ¶¶ 13-29. Defendants filed their opposition to the motion on December 17, 2025, *see* Dkt. 83 ("Opp."), and Plaintiffs filed a reply on January 13, 2026, *see* Dkt. 86 ("Reply"). The motion is fully briefed.[1]

---

[1] Plaintiffs requested oral argument via notation on their brief. The Court declines this request, because the parties' briefing was sufficient and oral argument would not materially assist the Court. *See Dotson v. Griesa*, 398 F.3d 156, 159 (2d Cir. 2005) ("[A] district court acts well within its discretion in deciding dispositive motions on the parties' written submissions without oral argument.").

**LEGAL STANDARD**

### I.    Amendment of Pleadings

Federal Rule of Civil Procedure ("Rule") 15(a) governs the pre-trial amendment of pleadings.  Under that Rule, "[a] party may amend its pleading once as a matter of course," Fed. R. Civ. P. 15(a)(1), and thereafter "only with the opposing party's written consent or the court's leave," Fed. R. Civ. P. 15(a)(2).  The Court "should freely give [that] leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Rule 15(a)'s standard applies even where the proposed amendments would necessitate joinder of new defendants under Rule 21.  Indeed, "[i]t is well established that the standard of Rule 21 is substantively no different from that expressed in Rule 15.  'Although Rule 21, and not Rule 15(a), normally governs the addition of new parties to an action, the same standard of liberality applies under either Rule.'"  *In re Digital Music Antitrust Litig.*, No. 06-md-01780 (LAP), 2015 WL 13678846, at *2 (S.D.N.Y. Mar. 2, 2015) (citation omitted) (quoting *Clarke v. Fonix Corp.*, No. 98-cv-06116 (RPP), 1999 WL 105031, at *6 (S.D.N.Y. Mar. 1, 1999), *aff'd*, 199 F.3d 1321 (2d Cir. 1999)); *accord Su v. Berkshire Nursery & Supply Corp.*, No. 23-cv-00275 (VB), 2024 WL 2270372, at *2 (S.D.N.Y. May 20, 2024).

The Second Circuit instructs district courts to "hew to the liberal standard set forth in Rule 15" when considering whether to grant leave to amend under Rule 15(a)(2), because there is a "strong preference for resolving disputes on the merits."  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015); *see also Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) ("[Rule 15(a)(2)'s] permissive standard is consistent with [the Second Circuit's] 'strong preference for resolving disputes on the merits.'" (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)).[2]  Even so, it has "long been held proper" for a

---

[2] This liberal standard does not apply to amendment motions filed after the expiration of a court-issued "scheduling order setting a date after which no amendment will be permitted"; in that

district court to deny leave "where amendment would be futile." *Loreley*, 797 F.3d at 190; *accord Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021). "Proposed amendments are futile if they 'would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6)[.]'" *IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)).

In other words, "[t]he futility of an amendment is assessed under the standard for a Rule 12(b)(6) motion to dismiss." *First Hill Partners, LLC v. BlueCrest Cap. Mgmt Ltd.*, 52 F. Supp. 3d 625, 642 (S.D.N.Y. 2014). That standard requires "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Second Circuit has "call[ed] for particular care in applying this inquiry [to ERISA cases] in order to ensure that the complaint alleges *nonconclusory* factual content raising a *plausible* inference of misconduct," yet recognizes "that 'ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences.'" *Sacerdote*, 9 F.4th at 107 (alterations adopted) (quoting *Pension Benefit Guar. Corp. ex rel. Saint Vincent Cath. Med. Ctr. S Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.* (*PBGC*), 712 F.3d 705, 718 (2d Cir. 2013)).

## II.    ERISA Fiduciaries

ERISA fiduciaries include "[t]he individual named as the 'administrator' in the plan instrument . . . and in the absence of such a designation, the 'sponsor' of the plan." *Humphries*

---

situation, amendment instead requires "a showing of the 'good cause' that is required to modify a scheduling order under Rule 16(b)(4)." *Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021) (quoting *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000)). That higher standard does not apply here, however, because Plaintiffs moved for leave to amend within the Court's scheduling order's deadline. Compare Dkt. 75 (extending Plaintiffs' time to amend to November 14, 2025), *with* Mot. at 1 (dated November 14, 2025).

*II*, 2025 WL 2402281, at *14 (quoting *In re Morgan Stanley ERISA Litig.*, 696 F. Supp. 2d 345, 353-54 (S.D.N.Y. 2009)).  Individuals not so named are nevertheless functional fiduciaries if they have "control and authority over the plan."  *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993).  Specifically, ERISA includes as plan fiduciaries those who "exercise[] any discretionary authority or discretionary control respecting management of such plan or exercise[] any authority or control respecting management or disposition of its assets," and those who "ha[ve] any discretionary authority or discretionary responsibility in the administration of such plan."  29 U.S.C. § 1002(21)(A); *see Coulter v. Morgan Stanley & Co.*, 753 F.3d 361, 366 (2d Cir. 2014) ("[F]iduciary status exists only 'to the extent' that the person 'has or exercises the described authority or responsibility' over a plan." (quoting *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1259 (2d Cir. 1987))).  "Thus, fiduciary status is imposed both on those 'who have actually been granted discretionary authority, regardless of whether such authority is ever exercised' and on 'those who exercise discretionary authority, regardless of whether such authority was ever granted.'"  *Humphries I*, 2024 WL 4711296, at *11 (quoting *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 63 (2d Cir. 2006)).

## DISCUSSION

Defendants contend that Plaintiffs' proposed amendments are futile, and therefore should not be permitted, because: (1) the Plan documents vest fiduciary authority only in the Administrative Committee, not in its Individual Members, and therefore only the Administrative Committee can be held liable for fiduciary decisions with respect to the Plan, Opp. at 5-7; and (2) Plaintiffs' allegations as to the Individual Members' conduct are insufficient to plead that they breached any fiduciary duties, *id.* at 7-9.  The Court, addressing these arguments in turn, finds them to be without merit.

5

### I.    The Relationship Between the Administrative Committee and Its Individual Members

Defendants argue that the Individual Members cannot have any fiduciary function, because (1) the Plan documents vest all such functions "exclusive[ly]" and "sole[ly]" "in the [Administrative] Committee as a whole," (2) the Individual Members cannot "override or take unilateral action on behalf of the [Administrative] Committee," and therefore (3) "only the decision-making body itself (the [Administrative] Committee) can defend the body's collective actions." *Id.* at 6 (emphasis and citation omitted).  The Court is unpersuaded.

First, Defendants' argument appears to ignore that ERISA does not require, in every instance, that an individual be specifically imbued with fiduciary authority.  Rather, and as discussed, the statute is also concerned with those who exercise that authority even when it is not specifically granted to them.  *See Humphries I*, 2024 WL 4711296, at *11 (explaining that ERISA fiduciaries include "those who exercise discretionary authority, regardless of whether such authority was ever granted" (quoting *Bouboulis*, 442 F.3d at 63)).  Accordingly, even if the Court were to accept Defendants' argument that "the governing plan documents [do not] delegate any authority or responsibility to individual committee members," Opp. at 6, notwithstanding the fact that the Administrative Committee is specifically named as a fiduciary, that does not defeat the notion that the Individual Members are functional fiduciaries.

Second, and equally important, Defendants cite no persuasive authority to support their asserted bright-line rule that the Administrative Committee's fiduciary status necessarily shields its Individual Members from ERISA liability.  To the contrary, several courts in this Circuit and beyond have rejected that proposition, finding plausible claims for breach of fiduciary duty against individual committee members despite their presence on a formal committee.  *See, e.g.*, *Sacerdote v. New York Univ.*, No. 16-cv-06284 (AT) (VF), 2022 WL 22811556, at *6 (S.D.N.Y.

Oct. 24, 2022) (granting leave to amend to add individual committee members as defendants where plaintiffs "allege[d] that the [c]ommittee and its individual members had the responsibility to control and manage the administration of the [p]lans under ERISA," even though plaintiffs did not allege that individual members "had the power to 'override' the [c]ommittee"), *objections overruled*, 2023 WL 4894909 (S.D.N.Y. Aug. 1, 2023); Transcript of Oral Argument at 21-22, *Jacobsen v. Long Island Cmty. Hosp.*, No. 24-cv-00386 (E.D.N.Y. May 7, 2025) (Dkt. 86) ("*Jacobsen* Tr.") (denying motion to dismiss claims against individual committee defendants where "all the individual [d]efendants served on the [p]ension [c]ommittee for at least some time and thus the complaint sufficiently alleges that the individual [d]efendants are fiduciaries because they have the sole authority to amend or terminate in whole or in part of the plan and have discretionary authority to control the operations, management, and administration of the plan"); *Ruilova v. Yale-New Haven Hosp., Inc.*, No. 22-cv-00111, 2023 WL 2301962, at *21 (D. Conn. Mar. 1, 2023) (finding that plaintiffs adequately pleaded that individual committee members were fiduciaries where plaintiffs "adequately pled a breach of fiduciary duty by the [c]ommittees in" certain discretionary determinations, "and the [c]ommittees' decisions must be made by the [c]ommittees' members"); *In re Xerox Corp. ERISA Litig.*, No. 02-cv-01138 (AWT), 2008 WL 918539, at *5 (D. Conn. Mar. 31, 2008) (rejecting argument that defendant could not be sued "in her individual capacity because the [plan] designated the Joint Administrative Board . . . as the [p]lan [a]dministrator," noting that "defendants cite no authority for th[at] proposition," and explaining that "th[e] functional approach" instead required "a fact-sensitive inquiry into the extent of responsibility and control exercised by" the individual defendant); *see also Stewart v. Thorpe Holding Co. Profit Sharing Plan*, 207 F.3d 1143, 1156-57 (9th Cir. 2000) ("[W]here, as here, a committee or entity is named as the plan fiduciary, the corporate officers or trustees who carry out the fiduciary functions are themselves fiduciaries and

7

cannot be shielded from liability by the company."); *Pedersen v. Kinder Morgan Inc.*, 622 F. Supp. 3d 520, 541 (S.D. Tex. 2022) (holding that "the [c]ommittee and its individual members exercised discretionary authority and discretionary control respecting management of the [p]lan sufficient to confer fiduciary status" where "it is undisputed that the [f]iduciary [c]ommittee was made up of the individual committee members and that the [c]ommittee exercised sole authority and responsibility for the administration of the [p]lan"); *Miller v. Autozone, Inc.*, No. 19-cv-02779, 2021 WL 8694116, at *2-3 (W.D. Tenn. Sept. 20, 2021) (granting motion to amend to add individual committee defendants notwithstanding defendant's argument that "the proposed amendment fails to distinguish any acts taken individually by the committee members as opposed to the full committee"); *Medina v. Cath. Health Initiatives*, No. 13-cv-01249, 2014 WL 4852272, at *3 (D. Colo. Sept. 30, 2014) (finding that plaintiffs had adequately pleaded individual committee members as fiduciaries, and noting that "[i]t can hardly be gainsaid, and thus is reasonable to infer, that a committee can act, or fail to act, only through the actions or omissions of its individual constituent members"); *Caldwell v. PNC Fin. Servs. Grp., Inc.*, 835 F. Supp. 2d 510, 520 (S.D. Ohio 2011) (holding that John Doe defendants alleged to be members of committee "might arguably be proper defendants . . . as members of the entity responsible for making final decisions under the [p]lan" and denying motion to dismiss them from case); *cf. In re Xcel Energy, Inc., Sec., Derivative & ERISA Litig.*, 312 F. Supp. 2d 1165, 1180 (D. Minn. 2004) (rejecting argument that "individuals on committees with fiduciary responsibility such as the [f]inance [c]ommittee were not acting in an individual capacity" as "deny[ing] factual allegations rather than challeng[ing] the sufficiency of the pleadings").

Defendants rely on *Luense v. Konica Minolta Bus. Sols. USA Inc.*, 541 F. Supp. 3d 496, 509 (D.N.J. 2021) and *In re JPMorgan Chase & Co. ERISA Litig.*, No. 12-cv-04027 (GBD), 2016 WL 110521 (S.D.N.Y. Jan. 8, 2016), *see* Opp. at 5, but neither case aids them.

8

*Luense* does hold that "[t]he conclusory assertion that the committee and each of its members were fiduciaries of the plan during the class period because each exercised discretionary authority over management or disposition of plan assets is insufficient to plausibly plead that the individual committee members were fiduciaries." 541 F. Supp. 3d at 509 (citation modified). But the Court finds that case of minimal persuasive value when viewing it against the many aforementioned cases that reach the opposite conclusion. Moreover, as the court noted in *Ruilova*, the court in *Luense* "does not set forth any reasoning" (or citation) for its brief analysis and conclusion, *Ruilova*, 2023 WL 2301962, at *21, which further counsels this Court against following it.

Next, in *JPMorgan*, the plaintiffs "made only the conclusory allegation that JPMorgan was [a functional] fiduciary because 'it has discretionary authority and control regarding the administration and management of the [p]lan and its assets.'" 2016 WL 110521, at *3 (citation omitted) (alteration adopted). The court viewed this allegation as a "bare legal conclusion[]" that did not adequately plead JPMorgan's fiduciary function. *Id.* This Court takes no issue with that analysis but is not convinced that it applies here, where Plaintiffs allege not only that the Individual Members have such fiduciary functions, but also that the Individual Members are part of the body that Defendants concede is, itself, a fiduciary of the Plan and attended meetings as part of that membership. *See* Opp. at 6 (arguing that Plan "documents readily demonstrate that fiduciary responsibilities were vested in the Committee as a whole" (emphasis omitted)).

Defendants contend further that "individual members of a committee 'are liable as fiduciaries under [ERISA] only if they personally breach a fiduciary duty,'" and they conclude from this rule that such committee members must have, for example, engaged in "fraud or a conflict of interest" or some other conduct constituting "special circumstances" to permit their

9

liability.  *Id.* at 4-5 (first quoting *Dardaganis v. Grace Cap. Inc.*, 889 F.2d 1237, 1242 (2d Cir. 1989); and then quoting *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 394, 428 (S.D.N.Y. 2010)).

But Defendants' cited authority does not support their position.  In *Dardaganis*, the district court had held that both GCI (an investment manager) and H. David Grace (GCI's president, chief executive officer, and principal shareholder) were ERISA fiduciaries with respect to a retirement fund, and that both had breached their duties to the fund.  889 F.2d at 1238-39.  Specifically, the district court had held that Grace "became a fiduciary to the [p]lan because he was not only president, chief executive officer, and principal shareholder of GCI, but also was solely responsible for all investment decisions made on behalf of the [f]und account." *Id.* at 1240 (internal quotation marks and citation omitted).  On appeal, Grace argued that ERISA did not permit his personal liability unless he "ha[d] used the corporate form as a shield from" such liability.  *Id.* at 1242.  The Second Circuit rejected this argument.  Because Grace had "personally exercised discretion over how the [plaintiff]'s portfolio was invested," meaning that he was functionally a fiduciary, he "should hardly be surprised that . . . he assumed the risk of personal liability" through that exercise.  *Id.*  The court explained that ERISA specifies that fiduciaries who breach their duty to the plan "shall be *personally* liable to make good to such plan any losses to the plan resulting from each such breach."  *Id.* at 1242-43 (quoting 29 U.S.C. § 1109(a)).  Thus, the Second Circuit rejected Grace's argument — which Defendants echo here, *see* Opp. at 4-5 — that finding him personally liable would "impos[e] 'strict liability' on any individual who exercises control or discretion over the assets of an ERISA plan, even when the individual acts through a corporate entity."  *Dardaganis*, 889 F.2d at 1242.  Similarly, here, the Individual Defendants are alleged to be functional fiduciaries in their own right, who sit on the Administrative Committee and exercise authority and control over the Plan.  *See* Proposed SAC ¶¶ 13-28 (alleging that each Individual Member "exercised discretionary authority and control

over the administration of the Plan and the management of its assets, including the selection and monitoring of the Plan's investment options and investment advisors").

Beacon Associates, which Defendants also cite, applies the same rule as Dardaganis. There, an investment firm recommended that its clients continue to invest in a fund controlled by Bernie Madoff, despite the firm's "grave doubts" that Madoff was legitimate.  745 F. Supp. 2d at 426.  The plaintiffs asserted breach of fiduciary duty claims, under ERISA, against both the firm and the entity (Bank of New York, or "BONY") that had acquired it during its alleged misconduct, as well as against various individuals within each company.  Id. at 396.  The court dismissed the claims against the BONY defendants, because the plaintiffs had "plead[ed] no specific facts indicating that BONY or the individual BONY defendants were involved in or knew of any of the alleged wrongdoing on the part of [the investment firm]; their allegations [we]re mainly based on job descriptions culled from BONY's website, without any specific allegations that the individuals were connected with misconduct."  Id. at 428.  The court also dismissed the plaintiff's ERISA claims against certain individuals at the investment firm for the same reason: the claim as to those defendants was based only on the plaintiffs' "conclusory assertions and descriptions of job titles."  Id.  Beacon Associates thus hews to the functional test, as applied in Dardaganis: A corporate officer's general decision-making capacity is not a substitute for the grant or exercise of decision-making authority over a plan, and it is the latter that gives rise to liability under ERISA.  See id. ("An individual cannot be held liable for corporate ERISA violations solely by virtue of his role as officer, shareholder, or manager." (quoting NYSA-ILA Med. & Clinical Servs. Fund v. Catucci, 60 F. Supp. 2d 194, 206 (S.D.N.Y. 1999))).  Here, again, the Individual Members are alleged to have discretionary authority over the Plan rather than mere decision-making capacity at Mitsubishi Chemical generally.

Defendants' attempt to draw a broader rule about heightened requirements for individual fiduciary liability from these cases is unavailing.

Finally, Defendants argue that adding the Individual Members to the action "would not . . . entitle[] [Plaintiffs] to any additional relief from the Individual Members beyond what they might recover from the existing [D]efendants for any alleged loss to the Plan." Opp. at 9. However, in addition to enabling recovery for losses to a plan, ERISA provides for (and Plaintiffs here seek) equitable relief from breaching fiduciaries. *See* 29 U.S.C. § 1109(a) (providing that fiduciaries who breach their duties "shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary"); *see also* FAC ¶ 63 (stating that Defendants are liable "to make good to the Plan any losses to the Plan resulting from the breaches of fiduciary duties alleged in this Count, and for such other equitable or remedial relief the Court deems appropriate"); Proposed SAC ¶ 64 (same). As the Second Circuit recognized in *Sacerdote*, such equitable relief may include the removal of one or more of the Individual Members from the Administrative Committee, and seeking such relief requires naming the Individual Members as defendants. *Sacerdote*, 9 F.4th at 116 & n.86 (explaining that plaintiffs sought individual committee members' removal "in their proper role of policing the [p]lans' fiduciaries," that "[s]uch equitable relief is available under 29 U.S.C. § 1109(a)," and that "[p]laintiffs' effort was thwarted, in major part, because [the individuals] had not been named as defendants"). Thus, the Administrative Committee structure cannot shield the Individual Members from liability.

In short, existing case law and ERISA do not support Defendants' position that only the Administrative Committee, and not the Individual Members, are subject to liability for alleged breaches of fiduciary duties.

II.    **The Sufficiency of the Proposed Pleadings**

Finally, Defendants argue that the Proposed SAC insufficiently alleges that any of the Individual Members engaged in conduct constituting a breach of their fiduciary duties, and that the Proposed SAC instead engages in impermissible group pleading. Opp at 7-9. The Court disagrees.

In *Humphries II*, the Court held that, with respect to Plaintiffs' share class claims, the FAC adequately "alleged 'that a superior alternative investment was readily apparent such that an adequate investigation — simply reviewing the prospectus of the fund under consideration — would have uncovered that alternative.'" *Humphries II*, 2025 WL 2402281, at *9 (quoting *Sacerdote*, 9 F.4th at 108). The Court further held that it could "'reasonably infer from what is alleged that the process' for selecting and monitoring the menu of share-class investment options available in the Plan 'was flawed' or 'that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident.'" *Id.* (quoting *PBGC*, 712 F.3d at 718).

These holdings were premised on factual allegations pleaded in the FAC that are also pleaded in the Proposed SAC — namely, that Defendants "offer[ed] more expensive mutual-fund share classes when cheaper, identical share classes of the same fund were available as investment options for the Plan," that there were seven "mutual funds for which the Plan could have selected share classes with lower expense ratios," and that "[t]his information was included in fund prospectuses and would have been available to inquiring fiduciaries when the fiduciaries decided to offer the funds in the Plans." *Id.* (citing FAC ¶¶ 23-36); *see also* FAC/SAC Redline at 15-22 (showing that factual allegations in FAC ¶¶ 23-36 are unchanged in Proposed SAC ¶¶ 37-51). Plaintiffs adequately allege that the Individual Members of the Administrative Committee — a body that Defendants concede is a Plan fiduciary, *see* Opp. at 6 — committed

those same breaches.  The Court is unpersuaded by Defendants' contention that the Proposed

SAC grounds the Individual Members' liability solely on the position that each holds.  *See id.* at

4-5; *see also LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997) ("Unlike the common law

definition under which fiduciary status is determined by virtue of the position a person holds,

ERISA's definition is functional." (quoting *Mason Tenders Dist. Council Pension Fund v.

Messera*, 958 F. Supp. 869, 881 (S.D.N.Y. 1997))).  Indeed, the Individual Members allegedly

hold various positions within Mitsubishi Chemical and its affiliates.  *See, e.g.*, Proposed SAC

¶ 13 (naming as defendant the "Chief Financial Officer of the Mitsubishi Chemical Holdings

Group"), ¶ 15 (naming the "Business Improvement Director of the Polyester Films division at

Mitsubishi Chemical"), ¶ 16 (naming the "Human Resources Director at Mitsubishi Chemical"),

¶ 27 (naming the "Director of Global Strategy and Planning at the Mitsubishi Chemical Group").

Plaintiffs do not assert that these positions give rise to liability.  Rather, they allege that each of

the Individual Members served on "the Plan's Administrative Committee," which "controls and

manages the operation and administration of the Plan," and that the Individual Members

participated in Administrative Committee meetings on specific dates.  *Id.* ¶¶ 12-28.  They allege

further that each of the Individual Members "exercised discretionary authority and control over

the administration of the Plan and the management of its assets, including the selection and

monitoring of the Plan's investment options and investment advisors."  *Id.* ¶¶ 13-28.  These

allegations appropriately tie the Individual Members' purported fiduciary status to their function,

rather than their mere positions.  *See Mason Tenders*, 958 F. Supp. at 882 (holding that

individual defendant's "membership on the [f]und's investment committee may support an

inference that [he] functioned as a fiduciary as defined by ERISA," and explaining that ERISA's

legislative history "confirms that 'fiduciaries include . . . members of a plan's investment

14

committee'" (quoting H.R. Rep. No. 93-1280 (1974) (Conf. Rep.), *as reprinted in* 1974 U.S.C.C.A.N. 5038, 5103)).

The Court also disagrees with Defendants that the Proposed SAC's allegations as to the Individual Members constitute impermissible group pleading.  *See* Opp. at 7-8.  While "'lumping' defendants together may in many instances be improper, the Second Circuit has also made clear that Plaintiffs do not always need to 'separate out claims against individual defendants' as long as those defendants have 'notice of the substance of plaintiff's claims' against them.  In particular, if a plaintiff alleges that multiple defendants engaged in the same conduct, the plaintiff may properly make 'allegations against "Defendants" collectively.'" *Kashef v. BNP Paribas SA*, No. 16-cv-03228 (AJN), 2021 WL 1614406, at *2 (S.D.N.Y. Apr. 26, 2021) (citation omitted) (first quoting *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004); and then quoting *Ritchie v. N. Leasing Sys., Inc.*, 14 F. Supp. 3d 229, 237 (S.D.N.Y. 2014)); *see also Ortiz v. Consolidated Edison Co.*, 801 F. Supp. 3d 260, 296 (S.D.N.Y. 2025) ("[N]othing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant." (citation omitted)).  The FAC adequately pleaded its breach of fiduciary duty claim against both Mitsubishi Chemical and the Administrative Committee based on a common set of facts, *see Humphries II*, 2025 WL 2402881, at *9-11, and the Proposed SAC now seeks to assert that claim against Mitsubishi Chemical, the Administrative Committee, and the Individual Members based on the same common set of facts.  The Court sees no reason to disturb its prior ruling by finding that allegations sufficient to state a claim against two fiduciary defendants would be insufficient to state a claim against an additional set of fiduciary defendants.

Further seeking to distinguish between the propriety of suing the Administrative Committee as a whole and the propriety of suing its Individual Members, Defendants point to the

hypothetical scenario of "an imprudent action passed over [a particular Individual Member's] objections," Opp. at 4; to the premise that certain Individual Members were not on the Administrative Committee when certain investment decisions were made and thus cannot have acted imprudently with respect to those particular decisions, *id.* at 8-9; and to the more general notion that "[t]he individual circumstances of each [Individual] [M]ember varies too much to enable the Court to reasonably infer that any one of them acted imprudently," *id.* at 8.  These are reasonable concerns, but they implicate fact issues not appropriately resolved on this motion, which applies the Rule 12(b)(6) standard on notice pleading.  *See, e.g.*, *Jacobsen* Tr. at 18-19 (opining that whether an individual member may have been "a holdout" with respect to particular decisions reached by the committee "falls into a summary judgment bucket"); *In re Xcel Energy, Inc., Sec., Derivative & ERISA Litig.*, 312 F. Supp. 2d 1165, 1180 (D. Minn. 2004) (rejecting argument that "individuals on committees with fiduciary responsibility such as the [f]inance [c]ommittee were not acting in an individual capacity" as "deny[ing] factual allegations rather than challeng[ing] the sufficiency of the pleadings"); *see also Sacerdote*, 9 F.4th at 107 ("[W]e are cognizant that 'ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences.'" (quoting *PBGC*, 712 F.3d at 718)).

To be clear, it is the Court's expectation that Plaintiffs will move expeditiously to voluntarily dismiss Individual Members from this action if they learn, during discovery, facts suggesting that those Individual Members should not be subjected to liability.  *See Jacobsen* Tr. at 20 (explaining that "individuals who are not truly liable should not be dragged through the process," and thus advising plaintiff's counsel that "at any juncture when it becomes clear to you that somebody should be cut loose from the case, you should cut them loose from the case"); *Cunningham v. Cornell Univ.*, No. 16-cv-06525 (PKC), 2018 WL 1088019, at *1 (S.D.N.Y. Jan.

16

19, 2018) (acknowledging that "the assertion of multi-million dollar claims against these individuals who served on a committee at their employer's request has the tremendous power to harass these individuals because they will be required to list the lawsuit on every auto, mortgage or student financial aid application they file"). In the meantime, however, the allegations in the Proposed SAC are sufficient to entitle Plaintiffs to amend the FAC.

## III.    Prejudice to Defendants

Finally, Defendants argue that permitting Plaintiffs to amend the FAC would be unduly prejudicial, inasmuch as adding the Individual Members "serves no legitimate purpose" and would impose "significant cost and burden" upon them. Opp. at 9. The Court has already noted its disagreement with Defendants' first argument: Adding the Individual Members enables Plaintiffs to seek equitable relief against them that may otherwise be unavailable. As to Defendants' second argument, "complaints of 'the time, effort and money expended in litigating the matter,' without more, [do not] constitute prejudice sufficient to warrant denial of leave to amend." *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) (alterations adopted); *accord Sacerdote*, 2022 WL 22811556, at *4; *A.V.E.L.A., Inc. v. Estate of Monroe*, 34 F. Supp. 3d 311, 318 (S.D.N.Y. 2014). Therefore, Defendants have not sufficiently demonstrated that they will be prejudiced if Plaintiffs file the Proposed SAC.

17

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to amend is GRANTED, and they may file

the Proposed SAC.  The Clerk of Court is respectfully directed to terminate the motion at

Dkt. 78.

Dated: May 28, 2026
       New York, New York

                                        SO ORDERED.

                                        _Jennifer Rochon_____
                                        JENNIFER L. ROCHON
                                        United States District Judge